UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOEL E. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01731-SEB-MG |
| | ) |
| TONY SKINNER, | ) |
| DAWN JOHNSON, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Joel E. Taylor, a pre-trial detainee at the Delaware County Jail, brings claims against Defendant Sheriff Tony Skinner and Defendant Dawn Johnson for violating rights under the First Amendment, Fourteenth Amendment, and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants Sheriff Tony Skinner and Dawn Johnson have moved for summary judgment. Dkt. [15]. Mr. Taylor has not responded. For the reasons below, that motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A

court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Taylor failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

Mr. Taylor was a pretrial detainee at the Delaware County Jail from November 18, 2022, through at least June 18, 2025. Dkt. 17-1 at 1, 9 (Taylor Deposition). Mr. Taylor received multiple

write-ups while incarcerated for violations such as fighting with other inmates, disobeying orders, refusing to lock down, throwing food trays and cups of hot water at jail staff, and making and drinking hooch. *See generally* dkt. 17-3 (Incident Reports).

When Mr. Taylor entered the jail, he received the regular meal trays served at the jail. Dkt. 17-1 at 20. During the first year that Mr. Taylor was in the jail, he thought that the portion sizes on the trays were too small. *Id.* Also while Mr. Taylor was in the jail, he developed a persistent rash in his groin and on his back. *Id.* at 3. He thought that the rash might be an allergic reaction to the food he was eating, so he went on an elimination diet where he stopped drinking coffee and eating the beans, eggs, and onions that were served to him on his regular meal tray. *Id.* at 4–5. On some occasions, Mr. Taylor refused a meal tray altogether. *Id.* at 5. He was concerned that he was not getting enough calories, but he stopped eating certain foods and periodically refused the meal tray offered to him because he was scared that he did not know what was causing his rash. *Id.*

At some point, Mr. Taylor heard that inmates who worked in the kitchen got to eat whatever they wanted, so he began writing to Defendant Dawn Johnson and asking her to hire him to work in the kitchen. *Id.* at 5–6. Ms. Johnson did not hire Mr. Taylor to work in the kitchen. *Id.* at 19–20. She states in her declaration that she did not do so because she was aware of his extensive disciplinary history, knew that he had spent a lot of time on disciplinary lockdown, and did not think he was a suitable candidate to work in the kitchen. Dkt. 17-8 ¶¶ 8–9 (Johnson Declaration). Ms. Johnson did not directly tell Mr. Taylor that she would never hire him to work in the kitchen. Dkt. 17-1 at 19. She told him that it was easier for her to hire inmates who had already worked in the kitchen because they knew what to do and she did not have to train them. *Id.* at 20. She also told him to keep writing to her and maybe someday she would hire him to work in the kitchen. *Id.* at 19.

Approximately one year after Mr. Taylor first entered the jail, he met an inmate named "Stormy." *Id.* at 20. Mr. Taylor saw that Stormy's food tray that was different from his and looked like it was healthier and contained more food. *Id.* at 15, 20. Stormy told Mr. Taylor that it was a kosher food tray and that if Mr. Taylor wanted to get the same tray, all he had to do was request it. *Id.* at 20. Mr. Taylor requested a kosher diet (because he thought it was healthier and had more food) and began receiving kosher meal trays. *Id.* at 15, 19.

According to Mr. Taylor, at some point the kitchen started shorting the amount of food on the kosher meal trays. *Id.* at 21. Even so, the kosher meal trays almost always had more food on them than the regular meal trays. *Id.* As of June 18, 2025, Mr. Taylor was still receiving kosher meals and was content with the meals. *Id.* at 15–16.

When Mr. Taylor was booked into the jail on November 18, 2022, he was weighed by jail staff as being 200 pounds, and he self-reported that he was 6 feet 2 inches tall. Dkt. 17-2 ¶ 12 (Dye Declaration). Mr. Taylor's regular weight fluctuates between 197 and 207 pounds. Dkt. 17-1 at 6. Mr. Taylor stated that, when a nurse weighed him in August 2024, he weighed 173 pounds. *Id.*; dkt. 17-3 at 21. Mr. Taylor's medical records report that Mr. Taylor was weighed by the jail's medical staff twice before he filed this lawsuit, and he weighed 200 pounds on November 18, 2022, and 184 pounds on August 9, 2024. Dkt. 17-4 at 4, 8 (Medical Records). At no time did the jail's medical staff record Mr. Taylor's weight as 173 pounds. *See generally* dkt. 17-4. By June 18, 2025, Mr. Taylor thought that his weight was back up to "probably 195 pounds." Dkt. 17-1 at 6.

Every two years, if not more often, the Sheriff's Office has its menus reviewed by a registered dietitian to confirm that the jail's kitchen is meeting the inmate's caloric and nutritional needs. Dkt. 17-2 ¶ 7. The most recent menu review before Mr. Taylor filed this lawsuit was

conducted in June 2024 and confirmed that the menus provided sufficient nutritional content and calories to meet the needs of the majority of the inmates in the jail. *Id.* ¶¶ 8–9; dkt. 17-6 at 1.

The Sheriff's Office "Inmate Workers" policy provides that inmates may be given jobs within the jail "consistent with their security and supervision requirements and the needs of the Jail." Dkt. 17-7. It also provides that "[n]o inmate will be assigned or not assigned to a job on the basis of gender, race, religion, or national origin." *Id.*

To apply for a job in the jail's kitchen, inmates must submit a written request to Ms. Johnson through the jail's kiosk. Dkt. 17-2 ¶ 17. If Ms. Johnson thinks that she might like to have a particular inmate work in the kitchen, she makes inquiry with the Jail Commander or his designee to confirm that the inmate is sufficiently reliable and trustworthy to work in the kitchen around things like knives, hot water, stove burners, and the like. *Id.* ¶ 18. Inmates who have significant disciplinary histories are rarely, if ever, allowed to work in the kitchen. *Id.* at ¶ 19. Although Mr. Taylor submitted several requests to work in the jail's kitchen, he had an extensive disciplinary history, including fighting, disobeying orders, refusing to lock down, throwing food trays and cups of hot water at jail staff, and making and drinking hooch. *Id.* ¶ 20. Ms. Johnson states that she did not select Mr. Taylor to work in the kitchen because of his substantial disciplinary history and the significant amount of time he spent in lockdown. Dkt. 17-8 ¶ 8. She also explicitly states her decision was not due to Mr. Taylor's religion (as she was not aware of what Mr. Taylor's religion was), nor was it due to Mr. Taylor's receipt of kosher meal trays. *Id.* ¶¶ 10, 12.

Mr. Taylor has been a Christian his entire life. Dkt. 17-1 at 17. He agrees that he has been able to practice his religion while incarcerated. *Id.* at 23.

## III.
## Discussion

When the Court screened Mr. Taylor's complaint, it determined that he had stated claims under the First Amendment, the Fourteenth Amendment, and RLUIPA.[1] Dkt. 11 at 2. Sheriff Skinner and Ms. Johnson assert that they are entitled to summary judgment on all of these claims on the merits and because they are shielded by qualified immunity. The Court addresses these matters in turn.

### A.     First Amendment and RLUIPA

Both the First Amendment and RLUIPA require an inmate to show that the challenged prison practice substantially burdens his religious exercise and that his request for a religious exemption is sincere. *See Holt v. Hobbs,* 574 U.S. 352, 361 (2015); *West v. Radtke*, 48 F.4th 836, 844 (7th Cir. 2022) (citation omitted). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Holt*, 574 U.S. at 360 (citing 42 U.S.C. § 2000cc–5(7)(A)). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Id*. at 360–61. A substantial burden on religious exercise occurs when a prison attaches some meaningful negative consequence to an inmate's religious exercise, forcing them to choose between violating their religion and incurring that negative consequence. *West*, 48 F.4th at 845 (citing *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019)).

The evidence is that Mr. Taylor requested a kosher diet not out of religious observance but because he believed the kosher trays to be healthier and contain more food than the regular trays.

---

[1] Because it was unclear whether Mr. Taylor was a pretrial detainee or a convicted prisoner during the relevant time period, the Court indicated that he might have stated a claim under the Eighth Amendment instead of the Fourteenth Amendment, but it has since been established that Mr. Taylor was a pretrial detainee. *See* dkt. 11 at 2; dkt. 17-1 at 9.

He also stated that he was able to exercise his religion while incarcerated. With no evidence that Mr. Taylor's religious exercise was substantially burdened in any regard, Sheriff Skinner and Ms. Johnson are entitled to summary judgment on the First Amendment and RLUIPA claims.

### B. Fourteenth Amendment: Conditions of Confinement

Conditions-of-confinement claims for pretrial detainees, which flow from the Due Process Clause of the Fourteenth Amendment, are analyzed under an objective standard. *Hardeman v. Curran*, 933 F.3d 816, 821−22 (7th Cir. 2019). Under this standard, the plaintiff must show "that the conditions in [the jail] posed an objectively serious threat to his health; that the [defendants'] response was objectively unreasonable under the circumstances; and that they acted purposely, knowingly, or recklessly with respect to the consequences of their actions." *Mays v. Emanuele*, 853 F. App'x 25, 26–27 (7th Cir. 2021) (citing *Hardeman*, 933 F.3d at 823, 827 and *Miranda v. County of Lake*, 900 F.3d 335, 353−54 (7th Cir. 2018)). "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Mr. Taylor has failed to create a dispute of material fact as to any of the elements of a conditions-of-confinement claim. First, he has not shown that the meals at the jail posed an objectively serious threat to his health. The undisputed designated evidence shows that the Delaware County Jail's menus are reviewed at least every two years by a registered dietitian. A review in June 2024 confirmed that the jail's menus were calorically and nutritionally sufficient for the majority of jail inmates. Mr. Taylor asserts that the meals were inadequate, but he designates no evidence that would allow a jury to conclude—not speculate—that they were. And, as a layperson, he is not qualified to offer an opinion on the nutritional adequacy of the meals. Fed.

R. Evid. 701 (setting forth requirements for lay opinion testimony). Though the evidence most favorable to Mr. Taylor shows that his weight decreased from 200 to 173 pounds during his incarceration, Mr. Taylor admits to going on an elimination diet at his own initiative. He has not designated any evidence that would suggest that he lost that weight because of the adequacy of the meals, as opposed to his own choice to pursue an elimination diet. Further, there is no indication that 173 pounds is an *unhealthy* weight for Mr. Taylor, only evidence that he *usually* weighs more.

Second, even assuming for present purposes that the meal trays provided were constitutionally inadequate, Mr. Taylor has not shown that Sheriff Skinner or Ms. Johnson acted objectively unreasonably under the circumstances. He has not designated any evidence that they were aware of—or should have been aware of—the inadequacy of the meals. Biennial menu reviews were conducted to ensure the meals being provided were adequate. Mr. Taylor has identified no evidence that he alerted Sheriff Skinner or Ms. Johnson to any inadequacy in his meal trays or told them that he blamed the meal trays and not his own elimination diet for his weight loss. Without evidence that Sheriff Skinner or Ms. Johnson, in providing the meal trays that they did, acted purposely, knowingly, or recklessly with respect to providing inadequate nutrition, Mr. Taylor's claim cannot withstand summary judgment. Sheriff Skinner and Ms. Johnson are entitled to summary judgment on the conditions of confinement claim.

   C. **Fourteenth Amendment: Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, §1). "The Equal Protection Clause of the Fourteenth Amendment prohibits state and local governments from discriminating on the basis

of certain protected classifications and also bars governments from treating a person irrationally as a so-called 'class of one.'" *Doe v. Bd. of Educ. of City of Chi.*, 611 F. Supp. 3d 516, 532 (N.D. Ill. 2020) (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

In his complaint, Mr. Taylor stated that Ms. Johnson "has a no hire policy for kosher people." Dkt. 1-2 at 4. He makes no allegations about Sheriff Skinner in this regard. Mr. Taylor has presented no evidence of such a policy to not hire inmates receiving kosher trays, and at summary judgment a party cannot rest on their pleadings. *See Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 324). A jail policy explicitly prohibits religious discrimination in work assignments. Dkt. 17-7 at 1. Ms. Johnson affirmed under penalties of perjury that she did not select Mr. Taylor to work in the kitchen because of his substantial institutional disciplinary history and because he had spent a significant amount of time on lock down. Dkt. 17-8 ¶ 8. She specifically denied that her decision was based on Mr. Taylor's religion or receipt of kosher meal trays. *Id.* ¶¶ 10, 12. Mr. Taylor counters none of this evidence, and there is no dispute of fact here for a fact-finder to resolve. Sheriff Skinner and Ms. Johnson are entitled to summary judgment on this claim.

Because the Court has determined that summary judgment is appropriate on all claims on the merits, it will not address Defendants' argument that they are entitled to qualified immunity.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**. Dkt. [15].

Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: 2/19/2026

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOEL E. TAYLOR
25357
DELAWARE COUNTY JAIL
3100 S. Tilloston Ave
Muncie, IN 47302

Pamela G. Schneeman
Clark Johnson & Knight, Ltd.
pschneeman@cjklaw.com